United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 19, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-60178
_____

J. STEPHEN NAIL, ET AL.,

                                        Plaintiffs,

INTERVEST CORPORATION,

                                        Plaintiff - Appellant,

                        versus

MELQUIADES R. MARTINEZ, SECRETARY, DEPARTMENT
OF HOUSING & URBAN DEVELOPMENT,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

Before GARWOOD, JOLLY, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal raises issues relative to a defendant's right to recover attorney's fees against the government under the Equal Access to Justice Act ("EAJA"). Intervest Corporation ("Intervest") manages several properties that receive subsidies from the federal Department of Housing and Urban Development ("HUD"). On January 3, 2002, HUD debarred both Intervest and J. Stephen Nail, Intervest's sole shareholder and president. Intervest and Nail challenged this decision and prevailed after the district court determined that HUD's debarment decision was "arbitrary and capricious." In the case now before the court,

Intervest seeks an award of attorney's fees and costs under the EAJA for its successful defense in the debarment case.

This appeal presents two potential questions. The district court dismissed the complaint and denied attorney's fees to Intervest in this case on the basis that Intervest was not the "real party in interest." The question thus presented is whether the district court erred in adopting the real party in interest test under the EAJA. If we conclude that this was error, and reverse the district court's judgment that held for HUD, HUD presents the second question: Whether the district court erred in concluding that HUD's litigating position in that earlier proceeding was not "substantially justified" because, ipso facto, HUD's debarment of Nail and Intervest was "arbitrary and capricious."

Indeed, we do reverse the district court's adoption of the real party in interest test because that test is not consistent with the plain language of the EAJA. Thus, we are required to decide the second question and we conclude that a finding that HUD's underlying action was "arbitrary and capricious" does not, in itself, mean that HUD acted without "substantial justification." In sum, we reverse in part, vacate in part, and remand for the district court's further consideration of Intervest's claim for attorney's fees.

I

2

We begin with some background, including reference to the cases that preceded and underlie the one before us today. Intervest is a property management company that manages over sixty properties, several of which are subsidized through HUD's Farmer's Home Administration. Intervest is a subchapter-S corporation, meaning that all of the corporation's income is passed on to its shareholders for tax purposes. J. Stephen Nail is the owner, president, and chief executive officer of Intervest. Intervest monthly submitted Housing Assistance Payment (HAP) vouchers, which contained a certificate indicating that each unit for which a HUD subsidy was requested was in "decent, safe, and sanitary condition."

In 1998, the United States sued Nail and Intervest under the False Claims Act, 31 U.S.C. § 3729, alleging that Nail and Intervest violated their contractual obligations by submitting false claims with regard to these subsidized units. The district court dismissed the case on summary judgment after finding that HUD paid the claims fully aware of the condition of the subsidized units at Metro Manor, and after concluding that the allegedly false certification was not substantively material to the government's decision to pay the HAP. United States v. Intervest Corp., 67 F. Supp. 2d 637, 640 (S.D. Miss. 1999). HUD took no appeal.

Next, on January 2, 2002, HUD's Debarring Official debarred Nail and Intervest for failing to maintain two Mississippi properties in "decent, safe, and sanitary condition." In reaching

3

the decision on debarment, the Debarment Official contended that Nail and Intervest were required to maintain the properties with private funds, if necessary. Nail and Intervest were to be debarred for a term of three years.

Nail and Intervest reacted promptly. On March 28, 2002, they filed a lawsuit in the district court seeking a declaratory judgment that they were illegally debarred by HUD and seeking an injunction to restore them to good standing with HUD. On December 2, the court granted the summary judgment motion of Nail and Intervest because it found that there was no requirement that property owners invest private money to maintain properties in compliance with HUD regulations. The court determined that HUD's debarment decision was "arbitrary and capricious." HUD took no appeal.

This district court ruling prompted the case before us today. On February 28, 2003, Intervest filed an Application for Recovery of Fees and Costs under the EAJA, 28 U.S.C. § 2412. Nail did not join this action because his net worth made him ineligible for an award under the EAJA.[1] In ruling on Intervest's application, the district court noted that under the EAJA, a lack of substantial justification for the government's action creates a presumption that Intervest, as the prevailing party, is entitled to attorney's

---

[1] "'[P]arty' means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed[.]" 28 U.S.C. § 2412(d)(2)(B).

4

fees.  In this connection, the district court held that because the court had earlier deemed HUD's debarment of Nail and Intervest to be "arbitrary and capricious," it "<u>must</u> find that the government's position was not substantially justified." (Emphasis added).

The district court, however, then turned to apply the "real party in interest" test and found that because Intervest was Nail's alter ego, Nail was the real party in interest.  Therefore, because Nail was ineligible for an EAJA award, the court held that Intervest was not entitled to fees and costs under the EAJA. Intervest appeals this ruling, and HUD challenges the district court's holding that its position in the underlying litigation was not "substantially justified."

II

Thus, we first note that neither party to this appeal is completely satisfied with the district court's decision; although the district court ultimately dismissed the case, its decision ruled both for and against, respectively, each party on the issues that are now the subject of this appeal.  We will first decide the point on which the district court based its dismissal of the complaint in favor of HUD, namely that Intervest was not entitled to attorney's fees because it was not the real party in interest. Intervest argues that the district court failed to adhere to the EAJA's plain wording by requiring Intervest to prove that it was a real party in interest.  Such a requirement, Intervest asserts, is

5

inconsistent with both the plain language of the EAJA and this court's jurisprudence on this issue.

In this respect, HUD's basic argument is that the real party in interest test is consistent with Congress's intent in passing the EAJA; that is, Congress intended to subsidize litigation initiated by small businesses and not to award fees to ineligible parties who actually finance and control the litigation. HUD also argues that the real party in interest test is not inconsistent with our jurisprudence.

Because we conclude that the district court erred in adopting the real party in interest test, and accordingly reverse and remand, we must proceed to the second issue. HUD argues that the mere fact that the district court found HUD's action to be arbitrary and capricious does not mean, ipso facto, that HUD's litigation position was not substantially justified. HUD further argues that precedent requires a more thorough analysis. On the other hand, Intervest asks us to affirm the district court's ruling on the "substantial justification" question because the findings of fact underlying that ruling support a conclusion that the decision to debar Intervest and Nail was in fact not substantially justified. We hold that the district court also erred on the substantial justification question and direct the court to reconsider on remand.

III

A

6

We first address whether the district court erred in adopting the real party in interest test to determine whether Intervest was entitled to an award of attorney's fees and costs under the EAJA. Whether the district court erred in adopting the real party in interest doctrine is a question of law subject to de novo review. Texas Food Indus. Ass'n v. United States Dep't of Agric., 81 F.3d 578, 580 (5th Cir. 1996).

A party eligible to receive attorney's fees and costs under the EAJA is: "(i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). Intervest falls within the EAJA's definition of "party." It is a corporation whose net worth did not exceed $7,000,000 and it employed fewer than 500 people at the time the civil action was filed.

The district court nonetheless held that Intervest was not entitled to an award of attorney's fees and costs under the EAJA because Nail -- not Intervest -- was the real party in interest in the civil action. Because Nail did not qualify as an eligible party under the EAJA, the court determined that no award of attorney's fees and costs should be granted to Intervest. To

7

support this proposition, the district court applied the real party in interest test, which the D.C. Circuit had adopted in Unification Church v. Immigration & Naturalization Service, 762 F.2d 1077 (D.C. Cir. 1985) (holding that before an eligible party can recover fees and costs under the EAJA, the court must decide who the real party in interest is and decide whether that party is eligible for such an award).

In its application of the real party in interest doctrine to this case, the district court noted that Nail is the president and sole stockholder of Intervest and that the same attorneys represented both Nail and Intervest. In addition, Nail wrote that "[m]y personal resources have been exhausted due to legal fees my company has incurred that resulted from a lawsuit filed by the Government." The district court interpreted that statement to mean that Nail regarded his personal funds and those of Intervest as identical. Finally, the court noted that because Intervest is a subchapter-S corporation, all of the corporation's income passes through to its shareholders for tax purposes. On the basis of these facts, the district court determined that Nail was the real party in interest and it denied Intervest's application for attorney's fees and costs because Nail was ineligible for such an award under 28 U.S.C. § 2412(d)(2)(B)(i).

The D.C. Circuit adopted the real party in interest test in attempting "to divine the intent of Congress." Unification Church, 762 F.2d at 1089. The Unification Church court concluded that in

8

passing the EAJA, Congress intended to ease the burden on small businesses engaged in litigation with the federal government without subsidizing the acquisition of legal services by entities who are readily capable of affording those legal services. Id. at 1082. "To implement this latter congressional intent in the case at hand, invocation of the real-party-in-interest doctrine is proper." Id. In that case, the court determined that the Church -- not the employees who filed the claim -- was the real party in interest because the Church had consented to pay its employees' attorney's fees. Id. at 1082-83.

Yet, as noted above, Congress has precisely defined the term "party." Although we do not say that the D.C. Circuit was incorrect in its assessment of Congress's intent, its resort to the legislative history for the inclusion of a non-statutory requirement for EAJA eligibility was unnecessary. There is no ambiguity in the statutory language that would warrant looking beyond the plain language of the statute for additional understanding of Congress's intent. Zapata Hanie Corp. v. Arthur, 926 F.2d 484, 487 (5th Cir. 1991) ("Where a statute is unambiguous and there is no room for interpretation or construction of [a] provision, we cannot circumvent its clear words.").

It is certainly true that Congress was concerned that large entities capable of purchasing legal services might inappropriately recover fees and costs under the EAJA. That concern is precisely why it included in the EAJA the net-worth and employee-number

9

limitations.  If Congress had wanted to incorporate a real party in interest test into the EAJA's definition of a "party," then it could have done so.  Nowhere does Congress limit the EAJA's application to corporations whose shareholders individually are eligible for an award of fees and costs under the EAJA.

We addressed a similar issue in Texas Food, in which the United States Department of Agriculture contended that the EAJA eligibility of the National American Wholesale Grocers' Association depended not only on the association's net worth and number of employees but also on the assets and size of the association's members.  81 F.3d at 579.  In rejecting that proposition, we noted that we "must presume that a legislature says in a statute what it means and means in a statute what it says there."  Id. at 581-82 (quoting U.S. v. Meeks, 69 F.3d 742, 744 (5th Cir. 1995)).  HUD and the district court attempt to narrow the Texas Food holding to apply only to associations and their members.  Yet it is clear to us that Texas Food stands for the proposition that this court will not add requirements beyond the statute for qualification as EAJA eligible parties.  We therefore conclude that the district court's adoption of the real party in interest test was error.  This result requires us to now address the second issue in this appeal, which is presented by HUD.

B

The district court's determination on the issue of substantial justification under the EAJA is reviewed for an abuse of

10

discretion.  Pierce v. Underwood, 487 U.S. 552, 558-59 (1988). Underlying conclusions of law are reviewed de novo.  Texas Food Industry Ass'n v. United States Dept. of Agriculture, 81 F.3d 578, 580 (5th Cir. 1996).  We review findings of fact for clear error. Davidson v. Veneman, 317 F.3d 503, 505 (5th Cir. 2003).

The EAJA allows for an award of attorney's fees and other expenses to an eligible party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  The district court ruled that "the government's position was not substantially justified" because "this Court has already found that the decision by HUD to debar Plaintiffs was arbitrary and capricious."  The district court erred in basing its conclusion solely on this fact.  Griffon v. United States Dept. of Health and Human Services, 832 F.2d 51, 52 (5th Cir. 1987) (holding that "[m]erely because the government's underlying action was held legally invalid as being 'arbitrary and capricious' does not necessarily mean that the government acted without substantial justification for purposes of the [EAJA]...").

For a government decision to be considered substantially justified under the EAJA, the court must find that a "genuine dispute" exists in the case.  Pierce, 487 U.S. at 565.  The government's decision must be "justified to a degree that could satisfy a reasonable person."  Id.  Moreover, the EAJA requires the district court to conduct its substantial justification analysis

11

"on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B). The district court did not conduct the required analysis, and consequently, the threshold question of whether HUD's debarment decision was substantially justified is not resolved. We will therefore remand this issue to the district court for analysis of whether HUD's decision to debar Nail and Intervest was substantially justified and to make such findings of fact and conclusions as may be necessary to support its substantial justification holding.

IV

In sum, we hold that the district court erred in applying the real party in interest test because that test contradicts the plain language of the EAJA. Accordingly, we REVERSE that portion of the district court's judgment and REMAND for the district court to consider the claims in this case based upon the statutory language. We also hold that the district court erred in concluding that a previous ruling that a government action was arbitrary and capricious means, ipso facto, that the action was not substantially justified. Consistent with this ruling, we VACATE that portion of the district court's judgment and REMAND for the district court to consider further whether HUD was substantially justified in debarring Nail and Intervest. If it determines that HUD was not

12

substantially justified in its actions, it then must determine whether there are any special circumstances to deny Intervest attorney's fees based on the statutory language,[2] and if not, it must decide the amount of those fees, taking into special consideration the fact that the same attorneys represented and performed services for both Nail and Intervest in the debarment proceeding.

REVERSED in part, VACATED in part, and REMANDED.

---

[2] If, on remand, the district court determines that HUD's debarment decision was not substantially justified, it may still consider whether there are any special circumstances in this case that render an award unjust. 28 U.S.C. § 2412(d)(1)(A). Consistent with our rejection of the real party in interest doctrine, these special circumstances must amount to more than the fact that Nail is the owner, sole shareholder, and Chief Executive Officer of Intervest.

13